[No. 16305-5-II.    Division Two.    August 10, 1994.]

EUGENE CAMPOS, *Appellant,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent.*

380

*Todd R. Renda* and *Vail & Associates,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Loretta A. Vosk, Assistant,* for respondent.

HOUGHTON, J. — Eugene Campos appeals the trial court's grant of summary judgment in favor of the Department of Labor and Industries, concluding that RCW 51.32.160 is constitutional and upholding the Department's denial of Campos's request to reopen his claim for workers' compensation benefits. We affirm.

## FACTS

The record before the Superior Court established the following facts. On June 10, 1968, Eugene Campos injured his right elbow in the course of his employment with St. Regis Paper Company. An accident report was filed on June 17, 1968, and the claim was accepted by the Department of Labor and Industries (the Department). The Department entered determinative orders on July 5, and August 13, 1968, providing for payment of time-loss compensation to Campos through August 11, 1968. On March 5, 1970, the Department issued an order closing Campos's claim, with time-loss compensation as paid and a permanent partial disability award equal to 30 percent loss of function of the right arm at or above the elbow. This order was not appealed and became final.

On May 27, 1970, Campos applied to reopen his claim for aggravation of his condition. The Department reopened the claim through a June 1, 1970, order, effective May 15, 1970, for treatment only and effective May 21, 1970, for authorized treatment and action as indicated. The claim was closed again on November 12, 1971, with no additional permanent partial disability.

During the 1970's, Campos's claim was reopened and closed several times based upon his applications concerning aggravation of his condition. On August 3, 1983, the Department closed Campos's claim again, finding that treatment

was no longer necessary and there was no additional permanent partial disability.

Campos filed another aggravation application on September 19, 1983. In December 1983, the Department set aside the August 3, 1983, order closing the claim, and the claim remained open for authorized treatment and action as indicated. In April 1986, the Department issued an order closing the claim, holding that treatment was no longer necessary and awarding no additional permanent partial disability.

In January 1989, Campos filed yet another aggravation application and the claim was reopened on February 6, 1989. The order reopening the claim indicated that the claimant (Campos) was not eligible for disability benefits, such as time loss or permanent partial disability, because the application was not received within the time limitations set by law (*i.e.*, RCW 51.32.160 as amended in 1988). However, the Department's Director reopened the claim under his discretionary authority, effective October 11, 1988, for medical benefits only because there was evidence that the condition covered under the claim had worsened. On April 13, 1989, the Director sent a letter to Campos advising him of this decision.

In June 1989, Campos filed a protest and request for reconsideration of the denial of his claim. On July 11, 1989, the Department issued an order affirming the Department's February 6, 1989, order.

Campos's subsequent appeal of the Department's July 11, 1989, order was forwarded to the Board of Industrial Insurance Appeals (the Board), where the parties stipulated to the facts necessary for the Board's decision. Campos asserted that RCW 51.32.160 operates to deny him equal protection of the law under the Washington State Constitution and the fourteenth amendment to the United States Constitution. In a proposed decision and order, dated July 5, 1990, the Board affirmed the Department's July 11, 1989, order, but it did not decide the equal protection issue. Campos's Petition for Review was denied and the Board adopted its Proposed Decision and Order as the final order of the Board.

Campos then sought judicial review of the Board's final order by the Pierce County Superior Court. The Department filed a Motion for Summary Judgment on the grounds that there were no material issues of fact regarding the constitutionality of RCW 51.32.160 to be resolved at a trial. The trial court concluded that RCW 51.32.160 did not violate Campos's equal protection rights and granted summary judgment in favor of the Department, upholding the Board's order of September 10, 1990.

## ANALYSIS

Campos contends that the trial court erred in granting summary judgment in favor of the Department. He asserts that RCW 51.32.160 is unconstitutional because the 1988 amendment to this statute irrationally discriminates between claimants by allowing for unequal adjustment of benefits.

On appeal from a summary judgment, the appellate court performs de novo review, making the same inquiry as the trial court. *Plankel v. Plankel,* 68 Wn. App. 89, 90, 841 P.2d 1309 (1992); *see also Hill v. J.C. Penney, Inc.,* 70 Wn. App. 225, 238, 852 P.2d 1111, *review denied,* 122 Wn.2d 1023 (1993). Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c); *Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.,* 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Nationwide Mut. Fire Ins. Co. v. Watson,* 120 Wn.2d 178, 186, 840 P.2d 851 (1992).

Campos specifically challenges the first paragraph of RCW 51.32.160. Prior to 1988, the relevant portion of RCW 51.32.160 (Laws of 1986, ch. 59, § 4) provided:

> If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated, in any case the director, . . ., may, upon the application of the beneficiary, *made within seven years after the establishment or termination of such compensation* . . . readjust for further application the rate of compensation . . ..

(Italics ours.) Under this pre-1988 version of the statute, a claim for adjustment of compensation could be reopened any time within 7 years after compensation was last established or terminated.

RCW 51.32.160, as amended in 1988, provides:

> If aggravation, diminution, or termination of disability takes place, the director may, upon the application of the beneficiary, *made within seven years from the date the first closing order becomes final* . . . readjust the rate of compensation . . ..

(Italics ours.) Thus, the amended RCW 51.32.160 established a finite 7 years from the date a claim's first closure becomes final as the period during which a claim for adjustment of compensation could be reopened. Campos also challenges the following clause in the 1988 amendment to RCW 51.32.160:

> First closing orders issued between July 1, 1981, and July 1, 1985, shall, for purposes of this section only, be deemed issued on July 1, 1985.

### A

### Equal Protection

■ Campos contends that RCW 51.32.160 violates the equal protection clause of article 1, section 12 of the Washington State Constitution and the fourteenth amendment to the United States Constitution. A challenged statute is presumed constitutional and the challenger has the burden of proving it is unconstitutional. *State v. Lua*, 62 Wn. App. 34, 38, 813 P.2d 588, *review denied*, 117 Wn.2d 1025 (1991). It should not be declared unconstitutional unless it appears so beyond a reasonable doubt. *Lua*, at 38.

■ Equal protection of the laws under state and federal constitutions requires that persons similarly situated with

respect to the legitimate purpose of the law receive like treatment. *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978); *Oestreich v. Department of Labor & Indus.,* 64 Wn. App. 165, 170, 822 P.2d 1264 (1992). Equal protection requires only similar treatment, not identical impact, on persons similarly situated. *Oestreich,* at 170.

██ Campos initially asserts that the State's version of the equal protection clause may be construed as providing greater protection than the equal protection clause of the Fourteenth Amendment. In *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), the court sets forth six nonexclusive factors that are relevant in determining whether the Washington State Constitution extends broader rights to citizens than the federal constitution. If a party does not provide constitutional analysis based upon the factors set out in *Gunwall,* the court will not analyze the state constitutional grounds in a case. *First Covenant Church v. Seattle,* 120 Wn.2d 203, 224, 840 P.2d 174 (1992). Since Campos failed to present any analysis based upon the *Gunwall* factors, we make our determination in this case under the federal constitution. *See Clark v. Pacificorp,* 118 Wn.2d 167, 192 n.13, 822 P.2d 162 (1991).

The first step in equal protection analysis is determining the standard of review. *Harris v. Department of Labor & Indus.,* 120 Wn.2d 461, 476, 843 P.2d 1056 (1993). Campos contends that the intermediate scrutiny test should be applied because the right to receive workers' compensation benefits is a basic human right. He argues that the 1988 amendment to RCW 51.32.160 also fails under the traditional rational basis test because the amendment is not rationally related to any legitimate government purpose.

██ ██ When a statute involving neither a suspect classification nor a fundamental right is challenged on equal protection grounds, the reviewing court applies the rational basis test. *State v. Miles,* 66 Wn. App. 365, 367, 832 P.2d 500, *review denied,* 120 Wn.2d 1012 (1992); *State v. Carter,* 64 Wn. App. 90, 93, 823 P.2d 523 (1992). Under the rational

basis test, a statute violates equal protection guaranties unless (1) the legislation applies equally to all members within a designated class, (2) there are reasonable grounds to distinguish between those within and those without the class, and (3) the classification is rationally related to its legislative purpose. *Carter*, at 93; *Harris*, at 477.

In some cases, which do not involve fundamental rights but involve important or basic human rights, the Supreme Court has adopted an intermediate level of scrutiny. *Daggs v. Seattle*, 110 Wn.2d 49, 55, 750 P.2d 626 (1988). In the narrow instance when one's physical liberty is at issue, Washington courts apply an intermediate scrutiny test to analyze an equal protection challenge. *Lua*, 62 Wn. App. at 41. Under this test, the challenged law must be such as " 'may fairly be viewed as furthering a substantial interest of the State.' " *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983) (quoting *Plyler v. Doe*, 457 U.S. 202, 217-18, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982)).

Here, Campos's physical liberty is clearly not affected by RCW 51.32.160, so there is no ground for application of intermediate scrutiny on that basis. However, Campos urges this court to follow *Hunter v. North Mason Sch. Dist. 403*, 85 Wn.2d 810, 539 P.2d 845 (1975), wherein the court applied a "substantial relationship" test in reviewing the constitutionality of a nonclaim statute that imposed a notice requirement on actions involving governmental torts that was not imposed between private parties. The *Hunter* court noted that the right to be indemnified for personal injuries is a substantial property right. Likewise, Campos urges the application of intermediate scrutiny in this case upon the basis that a right to seek an adjustment in workers' compensation when a condition has worsened is a basic human right.

However, Campos fails to cite any legal authority in which intermediate scrutiny has been applied in the context of workers' compensation cases. Indeed, the Washington case law is to the contrary. In *Clark,* 118 Wn.2d at 192, the

court stated that "[t]he standard of review in workers' compensation cases is minimum scrutiny, or the rational basis test." Similarly, in *Oestreich,* the court stated:

> No fundamental right or suspect class is affected by RCW 51.32.160. Accordingly, the statute is subject only to minimal scrutiny.

*Oestreich,* at 170. Thus, the 3-part rational basis test is applicable in this case.

1. The legislation applies equally to all members of the class.

    Campos contends that the 1988 amendment to RCW 51.32.160 discriminates with respect to the closing order date. He argues that because the statute provides a window in which "[f]irst closing orders issued between July 1, 1981, and July 1, 1985 shall . . . be deemed issued on July 1, 1985", workers whose first closing orders were issued prior to July 1, 1981, receive up to 4 years less time in which to apply for reopening of their claims due to aggravation of their condition.

Campos's argument is without merit. RCW 51.32.160 applies alike to all members of the class in that it imposes a 7-year time limitation on all claimants seeking adjustment of compensation, commencing on the date the first closing order is final. Thus, it follows that: (1) a claimant whose first closing date was prior to July 1, 1981, would be barred from reopening his or her claim 7 years after the first closing order; (2) a claimant whose first closing date was between July 1, 1981, and July 1, 1985, would be barred from reopening the claim 7 years after July 1, 1985; and (3) a claimant whose first closing date was after July 1, 1985, would be barred from reopening the claim 7 years after his or her first closing order.

2. There are reasonable grounds to distinguish between those within the class and those falling outside of it.

Campos argues that the amended RCW 51.32.160 discriminates against similarly situated claimants because it creates three classes of claimants, and both (a) allows claims

that would be barred under the former version of the statute (by deeming a later closing date for one group of claimants), and (b) bars claims that would be allowed under the former statute (by failing to reset the limitation period after a finding of aggravation).

Our review of the statute reveals that it essentially creates two classes of claimants — (1) those whose claims have closing orders based upon factors which include medical recommendations, advice or examination, and (2) those whose claims have closing orders without medical recommendations, advice, or examination. The statute provides that claimants who fall within the second category are not subject to the 7-year limitation period. The absence of medical evaluation of a claimant's injury is a rational basis for distinguishing between the two groups of claimants regarding the applicability of the limitations period.

3.   The classification is rationally related to its legislative purpose.

Campos contends that the amended RCW 51.32.160 is not rationally related to the purpose of the Industrial Insurance Act because it results in an inadequate statutory remedy while continuing to bar common law claims. The policy behind the statute of limitations is that if no change in the claimant's condition requiring adjustment of his or her status has occurred in 7 years, then it is reasonable to decide that the condition is stabilized and to deny the claimant the right to file an aggravation claim after that time. *Hutchins v. Department of Labor & Indus.*, 44 Wn. App. 571, 574, 723 P.2d 18, *review denied*, 107 Wn.2d 1010 (1986). The statute's classification of claimants on the basis of whether or not the first closing order is based upon a medical recommendation, advice, or examination is rationally related to the purpose of finalizing workers' compensation claims following a 7-year period of stability of a claimant's condition where there has been no application for adjustment of status within that period.

## B

### Due Process

Campos contends that RCW 51.32.160 violates the constitutional guaranties of due process. He argues that the amended RCW 51.32.160 fails to meet the minimal requirements of due process because it unfairly deprives him of his property right in a readjusted rate of compensation. Additionally, he argues that the "window" created by the amendment is arbitrary, unreasonable and oppressive in that it has no relationship to the stability of a claimant's condition.

A claimant alleging deprivation of due process must first establish a legitimate claim of entitlement. *Haberman v. WPPSS*, 109 Wn.2d 107, 142, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988). Legitimate claims of entitlement entail vested liberty or property rights. *Haberman*, at 142 (citing *In re Marriage of MacDonald*, 104 Wn.2d 745, 748, 709 P.2d 1196 (1985)). A claimant has no vested right in the continuation of existing statutory law. *Haberman*, at 143. Moreover, a claimant has no vested right to make future applications for adjustment based on aggravation of his condition. *Oestreich*, at 169. Because Campos has no vested right to apply for adjustment of compensation for his disability claim, we need not address his due process argument.

Affirmed.

SEINFELD, A.C.J., and ALEXANDER, J., concur.

Reconsideration denied September 9, 1994.

Review denied at 126 Wn.2d 1004 (1995).