[No. 14541-7-III. Division Three. March 13, 1997.]

THE STATE OF WASHINGTON, *on the Relation of Kristina Morgan Sigler, Appellant*, v. SCOTT NOEL SIGLER, *Respondent.*

330

*Christine O. Gregoire, Attorney General,* and *Gwendolyn L. Griffin-Halliday, Assistant,* for appellant.

*John P. Gilreath* and *Cone, Gilreath, Ellis & Cole,* for respondent.

THOMPSON, A.C.J. — The State brought an action for child support against Scott Noel Sigler. He requested a deviation from the child support schedule for a residential credit. The commissioner denied his request based upon RCW 26.19.075(1)(d), which disallows a residential credit to noncustodial parents when the custodial parent receives

Aid for Families with Dependent Children (AFDC). Mr. Sigler appealed the commissioner's decision to the trial court contending the statute violated equal protection. The court found the statute unconstitutional under the rational basis test. The State appeals contending that the statute survives a constitutional claim under the rational basis analysis. The State also contends the trial court erred by failing to make specific findings in support of the downward deviation of support. We reverse.

Kristina Sigler was born on August 15, 1991. Kimberly McQuiston, Kristina's mother, receives AFDC. She assigned her rights to child support from Mr. Sigler to the State.

The State filed a paternity action and Mr. Sigler was determined to be Kristina's father. Ms. McQuiston was awarded primary custody, and Mr. Sigler was ordered to pay child support.

Mr. Sigler has a net monthly income of $1,765.77. Ms. McQuiston had a net monthly income of $200. The court imputed her income at $973. Pursuant to the child support worksheet, Mr. Sigler was ordered to pay $349.59 a month in child support. He requested a residential credit to reduce the amount of support because he had Kristina 40.5 percent of the time. The court commissioner denied his request because RCW 26.19.075(1)(d) prohibits the court from reducing child support based upon residential credit when the child's custodial parent receives AFDC.

Mr. Sigler appealed the commissioner's ruling to the superior court. The court reversed the commissioner's ruling, finding the statute was unconstitutional because it failed the rational basis test under an equal protection and fundamental rights analysis. The court then revised the order of child support reducing Mr. Sigler's monthly support to $181.57 a month. The State's motion for reconsideration was denied.

The State contends the court erred by determining RCW 26.19.075(1)(d), the statute prohibiting deviations from the

standard calculations of child support based upon the residential time spent with the noncustodial parent if the child receives AFDC, violated equal protection under both the state and federal constitutions. The challenged statute provides:

> The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court **may not deviate** on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child **or if the child is receiving aid to families with dependent children**.

RCW 26.19.075(1)(d) (emphasis added). Washington's constitution provides: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." CONST. art. I, § 12. The federal constitution states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

The equal protection clauses of both the state and federal constitutions require that similarly situated individuals receive similar treatment under the law. *State v. Smith*, 117 Wn.2d 263, 276-77, 814 P.2d 652 (1991). Identical impact on persons similarly situated is not required. *Campos v. Department of Labor & Indus.*, 75 Wn. App. 379, 385, 880 P.2d 543 (1994), *review denied*, 126 Wn.2d 1004 (1995). Since the privileges and immunities clause of the Washington State Constitution is substantially identical to the equal protection clause of the Fourteenth Amendment to the United States Constitution, challenges under both clauses may be dealt with simultaneously. *American Network, Inc. v. Utilities & Transp. Comm'n*, 113 Wn.2d 59, 77, 776 P.2d 950 (1989). A

statute is presumed constitutional; thus, the party challenging it bears the burden of establishing the constitutional violation. *Campos*, 75 Wn. App. at 384.

■ ■ The first task in determining whether RCW 26.19.075(1)(d) is constitutional is defining the class affected by the statute. The Legislature has broad discretion in defining classes in social and economic statutes. *Conklin v. Shinpoch*, 107 Wn.2d 410, 417, 730 P.2d 643 (1986). Classes defined by the Legislature are presumed constitutional. *In re Marriage of Gillespie*, 77 Wn. App. 342, 349, 890 P.2d 1083 (1995). To successfully attack a class it must be shown that the class is manifestly arbitrary, unreasonable, inequitable and unjust. *Sparkman & McLean Co. v. Govan Inv. Trust*, 78 Wn.2d 584, 588, 478 P.2d 232 (1970).

Mr. Sigler contends the class should be defined as all noncustodial parents. However, a clear reading of the statute indicates that the class affected is noncustodial parents whose children receive AFDC. Mr. Sigler is a member of that class. Defining the class as all noncustodial parents would broaden the class to include noncustodial parents not affected by the statute.

There are three ways to analyze an equal protection claim: (1) strict scrutiny, (2) intermediate scrutiny, and (3) rational basis. *Smith*, 117 Wn.2d at 277. Under a strict scrutiny analysis, a law will be upheld only if it is found to be absolutely necessary to promote a compelling state interest. *State v. Phelan*, 100 Wn.2d 508, 512, 671 P.2d 1212 (1983). Under intermediate scrutiny, a law will be upheld so long as it furthers a substantial state interest. *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987). Rational basis only requires that the law further a legitimate state interest. *Smith*, 117 Wn.2d at 277.

■ ■ A strict scrutiny analysis is used whenever a fundamental right is affected or a suspect class is involved. *Id.* Race, alienage, and national origin classifications are typically suspect. *Id.* It is clear Mr. Sigler is not a member of a suspect class. He does argue, however, that strict scrutiny should apply because his fundamental right to

maintain a relationship with his child is affected. A strict scrutiny analysis is employed when a law directly and substantially interferes with a fundamental right. *Lyng v. Castillo*, 477 U.S. 635, 638, 106 S. Ct. 2727, 91 L. Ed. 2d 527 (1986). The right to maintain a relationship with your child has been found to be a fundamental right. *P.O.P.S. v. Gardner*, 998 F.2d 764, 767 (9th Cir. 1993). Thus, the inquiry is whether RCW 26.19.075(1)(d) directly and substantially interferes with that right.

The Supreme Court has clearly indicated that laws which do not place direct restrictions on an individual's ability to exercise a right do not constitute a direct and substantial interference. *See Bowen v. Gilliard*, 483 U.S. 587, 107 S. Ct. 3008, 97 L. Ed. 2d 485 (1987) (law requiring poor parents receiving AFDC to include a child for whom support was being paid in family unit for purposes of calculating amount of aid did not directly and substantially interfere with a fundamental right). The Ninth Circuit, in ruling on the constitutionality of Washington's child support schedule determined that the child support rules did not directly and substantially interfere with the right to maintain a relationship with a child. *P.O.P.S.*, 998 F.2d at 768. Mr. Sigler's argument that his right to maintain a relationship with Kristina is directly interfered with by the law is not persuasive. He stated if he was not allowed the residential time credit he might spend less time with Kristina. For purposes of constitutional analysis, that is his choice. Nothing in the statute requires that he spend less time with his child. In *P.O.P.S.*, the Ninth Circuit stated that simply because a parent takes out their financial frustrations on their children does not afford them additional constitutional protections. RCW 26.19.075(1)(d) does not have a direct or substantial affect on Mr. Sigler's right to maintain a relationship with Kristina. There is no basis to apply the strict scrutiny standard to this law.

■ ■ The intermediate scrutiny analysis is used in limited circumstances. *Westerman v. Cary*, 125 Wn.2d 277,

294, 892 P.2d 1067 (1995). The United States Supreme Court applies this test to gender based classifications, and our Supreme Court uses it in classifications involving an important right of a semi-suspect class. *Id.* Washington often uses intermediate scrutiny when physical liberty is at issue. *Campos,* 75 Wn. App. at 386. A semi-suspect class is one which cannot be held accountable for its status, i.e., the poor. *Schaaf,* 109 Wn.2d at 18. Mr. Sigler also contends RCW 26.19.075(1)(d) should be subject to intermediate scrutiny. Mr. Sigler's physical liberty is not at issue. Noncustodial parents whose children receive AFDC cannot be considered a class not accountable for its status. Therefore intermediate scrutiny is not appropriate.

■ ■ Rational basis is the appropriate test. Analyzing a similar statute, California courts employed a rational basis analysis and found the statute constitutional. *See County of Los Angeles v. Patrick,* 11 Cal. App. 4th 1246, 14 Cal. Rptr. 2d 665 (1992); *Washington v. Cobb,* 194 Cal. App. 3d 773, 239 Cal. Rptr. 726 (1987).[1] Under a rational basis analysis a statute will withstand constitutional scrutiny if: (1) the law affects all individuals within a class in the same manner; (2) reasonable grounds exist for distinguishing between class members and nonclass members; and (3) the classification is rationally related to the purpose of the legislation. *Smith,* 117 Wn.2d at 279. The classification would have to be deemed arbitrary to lose the strong presumption of constitutionality. *Id.*

---

[1]The Fourth District Court of Appeals in California was asked to analyze Civil Code § 4727 which provides: "Except when a child or children are receiving an AFDC grant, upon request, the court may take into consideration expenses incurred and savings resulting from shared physical custody arrangements in determining the pro rata share of the mandatory minimum child support award to be allocated to each parent. For purpose of this chapter, 'shared physical custody' means an arrangement in which the parents share physical custody so that both have custody of the child or children more than 30 percent of a 365-day period."

*Cobb,* 194 Cal. App. 3d at 776 (citing Civil Code § 4727). In ruling on the constitutionality of the statute the court stated: "[T]he statute seeks to maximize benefits for needy families, minimize the public support burden and also to maintain a stable household for financially impoverished children." *Id.* at 777. The court determined the statute was constitutional. *Id.*

It is clear that RCW 26.19.075(1)(d) applies to all noncustodial parents whose children receive AFDC. Under the statute, no parent in that class may receive a reduction from the standard support calculation based upon the time their child spends with them. Thus, the first prong of the rational basis test is met.

Secondly, reasonable grounds must exist for making a class designation. Under both federal and state law, any parent receiving AFDC is required to assign all their rights to child support to the State. 42 U.S.C.A. § 602(26)(A); RCW 74.20.330; RCW 74.20A.030. The money collected is used to reimburse the State for its expenditures for public assistance. RCW 74.20A.030. The stated policy behind this assignment is to help ensure that children are maintained by the resources of their parents, and lessen the burden on the taxpaying public. RCW 74.20A.010. The State has an interest in placing the primary responsibility for the care and support of children on parents rather than on the taxpayers. *State v. Wood*, 89 Wn.2d 97, 100, 569 P.2d 1148 (1977). Since the taxpayers financially support children receiving AFDC rather than the noncustodial parents, reasonable grounds exist for Washington's Legislature to distinguish between noncustodial parents whose children receives AFDC from those whose children do not. Thus, the Legislature had a reasonable basis to create the classification. The classification is not arbitrary, unreasonable, inequitable or unjust. Thus, the second prong of the rational basis test is satisfied.

Finally, the classification must reasonably relate to the purpose of the legislation. The stated purpose behind RCW 26.19 is to (1) insure a child's basic needs are met, and (2) equitably apportion the child support obligations between the parents. RCW 26.19.001. The State has an interest in requiring parents, rather than the taxpayer, to financially support their children. The Legislature's purpose is to have parents fully financially support their children whenever possible. By not allowing the residential credit to noncustodial parents whose children receive AFDC, they

are furthering this purpose. Thus, the classification is reasonably related to the purpose of the legislation and RCW 26.19.075(1)(d) is constitutional. Mr. Sigler is not entitled to a deviation.

As to the second issue, a trial court is required to enter written findings of fact supported by the evidence when it enters an amount for support which deviates from the standard calculation. RCW 26.19.035(2); *In re Marriage of Sacco*, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990). The failure to enter findings is an abuse of discretion and subject to reversal. *In re Marriage of Glass*, 67 Wn. App. 378, 384, 835 P.2d 1054 (1992).

In the revised order of child support the court stated the reason for the deviation was that the father had the child 40.5 percent of the time. The evidence does support a finding that the child spent that amount of time with the father. The State argues that the court did not list any facts which indicate how much the father spends on the child when she is in his care which would justify the reduction in support. The court does fail to enter such findings, and gives no indications how the decrease was calculated. Although Mr. Sigler states how much money he spends on Kristina while she is in his care, the findings and conclusions entered by the judge do not reflect this. Thus, the deviation fails for this reason, as well as for noncompliance with RCW 26.19.075(1)(d).

We reverse.

KURTZ and BROWN, JJ., concur.